GULOTTA, Judge.
In this contract dispute, Wayne Cresap, appealing, claims the trial court erred: 1) in concluding the contract was mutually rescinded; and 2) in refusing to accept an expert witness. We affirm.
Plaintiff entered into a contract and paid a deposit to defendant, Kaly Nickta, Inc. a/k/a the Mystic Krewe of Shangri-La (hereinafter referred to as the Krewe) to serve as king of the Krewe for the 1982 Carnival season. The written agreement provides, in pertinent part, that the Krewe “will honor and bestow” upon plaintiff “the privilege of serving as king”, that the king “will attend and be presented at the supper dance in formal attire and in costume”, and that he will “host a single ‘King’s Party’ to be coordinated with and subject to the approval of the Captain ... to which the Captain, Officers, past Kings, and Kings-men shall be invited.... ”
A cloud came over plaintiff’s prospective reign, however, when ill feeling developed between the Krewe’s Captain, defendant Mary K. Lonatra, and plaintiff’s wife. Mrs. Lonatra thereafter informed plaintiff that she would not escort him as king or attend his party because of the difficulty with his wife. Plaintiff then withdrew as king and obtained a refund of his deposit. This suit followed.
It is plaintiff’s contention that Mrs. Lona-tra’s refusal as Captain to escort plaintiff or attend his party constituted a breach of contract that would have transformed the honor and privilege of his kingship into a source of embarrassment had he continued his reign. He argues that faced with her refusal, his only choice was to withdraw as king and obtain a refund of his deposit.
On the other hand, defendants contend the source of plaintiff’s withdrawal was not Mrs. Lonatra’s refusal to escort plaintiff but the tension between plaintiff’s wife and Lonatra that adversely affected both plaintiff and the Krewe. Defendants argue that because of this difficulty both plaintiff and the Krewe mutually agreed to rescind the contract for the betterment of all parties concerned. We agree.
As reflected in the minutes of the Krewe’s special board meeting on March 26, 1981, Mrs. Lonatra indicated that although the Krewe was required to honor plaintiff’s contract, she would refuse to escort plaintiff on the floor at the Krewe’s functions or attend any of his parties and would ask the Board to do likewise. Later in the meeting, however, Mrs. Lonatra retracted her statement, and stated the king “should not be let down” and his reign should be enjoyable, although she would prefer that plaintiff withdraw as King. The minutes of the March 26 meeting further indicate plaintiff’s mother-in-law, a Board member, stated plaintiff had earlier said that he would not want to be king “under all this pressure and that he felt the whole matter was not handled properly.” The Board asked plaintiff’s mother-in-law to ascertain his feelings and to advise the Board of his decision.
According to defendants’ version of the ensuing events, Mrs. Lonatra told plaintiff by telephone on the morning of March 27 that she would like him to be king, but would not escort him on the floor or attend his parties to “subject herself to verbal abuse” by plaintiff’s wife. Mrs. Lonatra’s recollection of the conversation, corroborated by her husband, was that plaintiff had said that he could not control his wife’s behavior and that the best thing for both parties and everyone involved would be for the Krewe to return his money.
According to Mrs. Lonatra, on the afternoon of March 27, plaintiff demanded and received a refund of his deposit, although she asked him to reconsider. Her testimony, corroborated by two witnesses, was that plaintiff declined to sign a written agreement of rescission or to write “null and void” across the contract, although he destroyed the document. Mrs. Lonatra further testified plaintiff had said there *48 “would be no problems” as long as plaintiffs mother-in-law was on the Krewe’s Board.
In contrast to defendants’ version, plaintiff testified he had learned of the problem on the morning of March 27,1981, from his mother-in-law. He telephoned Mrs. Lona-tra who told him she no longer -wished him to be king and would not escort him or attend his functions. According to plaintiff, he was “anxious” to be king, was “taken aback” by the news and asked Mrs. Lonatra to reconsider. Because it would be embarrassing to be king without the Captain’s escort, plaintiff stated he wanted his money returned. Cresap claims he accepted the return of the deposit only to mitigate damages. Plaintiff testified further that he had refused to sign the mutual withdrawal agreement because he wanted to be king.
The trial judge concluded in pertinent part:
“.... Plaintiff agreed not to be king and accepted the refund of his total deposits. Accordingly, it is this court’s opinion that there was mutual rescission of the contract and accordingly, plaintiff’s suit is dismissed.”
Accepting defendants’ version of the events, which is supported by the minutes of the Krewe’s Board meeting and the testimony, we find no error in the trial judge’s conclusion, based on credibility, that plaintiff and defendants mutually rescinded the contract because of the difficulties between Mrs. Lonatra and plaintiff’s wife. We reject plaintiff’s contention that Mrs. Lona-tra’s refusal to escort him and to attend his party constituted a breach of the contract. The problem arose not because of Mrs. Lo-natra’s declination to participate fully in the activities but because of the initial difficulties that existed between plaintiff’s wife and Lonatra. Having so concluded, we place no significance on Cresap’s contention that he accepted the return of the deposit in order to mitigate damages.
We likewise reject plaintiff’s arguments concerning the trial judge’s refusal to qualify David Barkley Smith as an expert in the field of protocol relating to Carnival balls and organizations. Despite Smith’s twenty-five year involvement in Mardi Gras activities, his experience was largely as a Krewe member of one organization and as an assistant in various balls. He had never conducted a Mardi Gras coronation ball. The trial judge permitted him to testify as a factual witness concerning his advice to plaintiff in preparation for his reign as king. We find no abuse of the judge’s discretion in refusing to accept him as an expert witness. See Catalanotto v. Hebert, 347 So.2d 301 (La.App. 4th Cir. 1977).
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.